# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| CONCESSIONS HH, JV,<br><br>　　　Petitioner,<br><br>v.<br><br>THE UNITED STATES SMALL BUSINESS ADMINISTRATION,<br><br>　　　Respondent. | Civil Action File No.<br>_____ |

# **PETITION FOR JUDICIAL REVIEW**

Petitioner Concessions HH, JV ("CHH") hereby petitions the court for review of the Order of the Office of Hearings and Appeals ("OHA") denying CHH's appeal of a Paycheck Protection Program ("PPP") loan review decision issued by the U.S. Small Business Administration ("SBA").

# **INTRODUCTION**

1.　This action seeks judicial review of the SBA's decision denying forgiveness of a Paycheck Protection Program ("PPP") loan CHH obtained pursuant to the Coronavirus Aid, Relief and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), codified at 15 U.S.C. § 636(a)(36)–(37). Because the SBA's decision (1) rests on an unlawful SBA regulation that directly contravenes the governing statute and (2) arbitrarily and capriciously applies the SBA

1

regulation even on its own terms, the Court should review and reverse the SBA's decision and direct it to forgive CHH's PPP loan.

## PARTIES

2. Petitioner CHH is a Georgia joint venture headquartered in Atlanta, Georgia and jointly owned by Concessions Intl., LLC and H&H Hospitality, LLC. CHH is in the food concessions business: It operates in the Atlanta International Airport, where it provides food services that allow patrons to select and pay for food items.

3. Respondent SBA is a federal agency created and governed by 15 U.S.C. § 633 *et seq.* The CARES Act authorizes the SBA to administer the PPP.

## VENUE AND JURISDICTION

4. Because CHH brings this petition for judicial review pursuant to the CARES Act and SBA regulations, this Court has jurisdiction of this dispute under 28 U.S.C. § 1331.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(c)(2), (e) and 5 U.S.C § 703 because CHH maintains its principal place of business in this judicial district.

6. SBA regulations provide that the agency's "[f]inal decisions may be appealed to the appropriate Federal district court." 13 C.F.R. § 134.1211(g); *see also* 13 C.F.R. § 134.1201(d) ("An appeal to OHA is an administrative remedy that must

be exhausted before judicial review of a final SBA loan review decision may be sought in a Federal district court.").

7. The SBA's decision in this matter became final on April 19, 2023, 30 days after service of the OHA's March 20, 2023 decision affirming the SBA's initial loan review decision. 13 C.F.R. § 134.1211(d).

## STATUTORY BACKGROUND & PROCEDURAL HISTORY

### I. Recognizing COVID-19's Particularly Severe Effects on Hospitality Businesses, Congress Grants Such Businesses More Generous PPP Conditions, Including Waiving SBA Affiliation Rules

8. The COVID-19 pandemic caused "devastating consequences for lives and health" and "massive economic disruption." *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 24 F.4th 640, 644 (7th Cir. 2022). "Congress responded with several rounds of massive economic assistance, including the Paycheck Protection Program." *Id.*

9. This congressional response began in March 2020, when Congress passed the CARES Act, Title I of which created the PPP. Pub. L. No. 116-136, 134 Stat. 281 (2020), codified at 15 U.S.C. § 636(a)(36).

10. The PPP is a "'new loan program to be administered by the SBA under Section 7(a) of the Small Business Act.'" *Defy Ventures, Inc. v. U.S. Small Bus. Admin.*, 469 F. Supp. 3d 459, 465 (D. Md. 2020) (quoting *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 458 F. Supp. 3d 1044, 1050, (E.D. Wis. May 1,

3

2020)). Under the PPP, "many small businesses became eligible for low-interest loans that would be guaranteed by the federal government and even eligible for forgiveness if the businesses used them, in essence, to keep employees on the payroll during the economic downturn." *Camelot Banquet Rooms*, 24 F.4th at 644. Through the PPP, participating banks made SBA-guaranteed loans to eligible entities. *See Defy Ventures*, 469 F. Supp. 3d at 465. And the CARES Act provides that these loans would be forgiven if the borrower used the loan funds for statutorily approved purposes, such as payroll expenses. *See id.*; 15 U.S.C. § 636m.

11. Congress initially appropriated $349 billion for the PPP, and then appropriated an additional $310 billion in April 2020. Pub. L. No. 116-139, 134 Stat. 620 (2020).

12. On December 27, 2020, Congress enacted the Economic Aid Act, which authorized borrowers who obtained initial PPP loans ("First Draw" loans) to obtain additional "Second Draw" PPP loans. *See* Pub. L. 116-260, 134 Stat. 1182, codified at 15 U.S.C. § 636(a)(37); *see generally MoveCorp v. Small Bus. Admin.*, No. CV 20-1739 (CKK), 2021 WL 3144943, at *3 (D.D.C. July 26, 2021); SBA, *Business Loan Program Temporary Changes; Paycheck Protection Program Second Draw Loans*, 86 Fed. Reg. 3,712, 3,712 (Jan. 14, 2021). The Act appropriated about $284 billion to fund such loans. *See* 134 Stat. at 2019.

13. Second Draw loans were subject to the same general statutory framework as First Draw loans, though with slightly tightened conditions. *See* 15 U.S.C. § 636(a)(37)(B). For example, the maximum loan amount for a single First Draw loan was $10 million, 15 U.S.C. § 636(a)(36)(E), while the maximum loan amount for a single Second Draw loan was $2 million, 15 U.S.C. § 636(a)(37)(C). Similarly, while a business entity was eligible for First Draw PPP loans if it had 500 or fewer employees, 15 U.S.C. § 636(a)(36)(D)(i)(I), to be eligible for Second Draw PPP loans the entity must have had 300 or fewer employees, 15 U.S.C. § 636(a)(37)(a)(iv)(I)(aa).

14. Congress provided that PPP loans would be made "under the same terms, conditions, and processes" that applied to the SBA's preexisting 7(a) Loan Program. 15 U.S.C. § 636(a)(36)(B); *see also, e.g., U.S. Small Bus. Admin. v. Weather King Heating & Air, Inc.*, 648 B.R. 200, 205 (N.D. Ohio 2023) ("The PPP was inserted beneath the umbrella of SBA's robust 7(a) Loan Program."). The CARES Act thereby sets a default rule under which many of the SBA regulations that govern 7(a) loans apply to PPP loans as well. *See id.* These regulations include the SBA's affiliation rules, which among other things determine when multiple corporate entities are sufficiently closely connected such that the SBA will aggregate them together for the purposes of assessing eligibility for loan programs. *See* 13 C.F.R. § 121.103 (imposing detailed affiliation rules and further providing that

separate affiliation rules "set forth in § 121.301" apply to "applicants in SBA's Business Loan … Programs")[1]; 13 C.F.R. § 121.301(f).[2]

15. For example, just a few weeks after Congress enacted the CARES Act, the SBA promulgated an interim final rule providing that a business "entity generally is eligible for the PPP if it, *combined with its affiliates* [as determined under 13 C.F.R. § 121.103], … has 500 or fewer employees." SBA, *Business Loan Program Temporary Changes; Paycheck Protection Program*, 85 Fed. Reg. 20,817, 20,818 (Apr. 15, 2020) (emphasis added); *see also id.* at 20,819 (noting that "the detailed affiliation standards contained in § 121.103 currently do not apply to PPP borrowers, because § 121.103(a)(8) provides that applicants in SBA's Business Loan Programs (which include the PPP) are subject to the affiliation rule contained in 13 CFR 121.301").

16. Importantly, in structuring the PPP Congress recognized that while the severe consequences of the COVID-19 pandemic and subsequent public-health

---

[1] The version of this regulation applicable here was promulgated on February 23, 2021 and was effective from February 23, 2021 to January 4, 2022. *See* SBA, *Consolidation of Mentor-Prot´Eg´E Programs and Other Government Contracting Amendments*, 86 Fed. Reg. 10,732 (Feb. 23, 2021). For the Court's convenience, CCH has attached this version of the regulation as Exhibit A.

[2] The version of this regulation applicable here was promulgated on December 14, 2020 and was effective from March 11, 2020 to September 7, 2021. *See* SBA, *Express Loan Programs*, 85 Fed. Reg. 80,581 (Dec. 14, 2020). For the Court's convenience, CCH has attached this version of the regulation as Exhibit B.

6

measures were felt across the economy, food-service and other hospitality businesses were "hit especially hard because in-person gatherings are forbidden." *Camelot Banquet Rooms*, 458 F. Supp. 3d at 1063; *see also, e.g., M. Rae, Inc. v. Wolf*, 509 F. Supp. 3d 235, 250 (M.D. Pa. 2020) ("It is beyond peradventure that the hospitality industry has been devastated by the COVID -19 pandemic."). And this economic devastation imposed "significant hardships" on the businesses themselves and their employees. *Oregon Rest. & Lodging Ass'n v. Brown*, No. 3:20-CV-02017-YY, 2020 WL 6905319, at *7 (D. Or. Nov. 24, 2020).

17. In response to these distinctive burdens, Congress extended special solicitude to the hospitality industry, such as by applying more generous maximum-loan-calculation rules for any business "assigned a North American Industry Classification System code beginning with 72," 15 U.S.C. § 636(a)(36)(C)(iv)—in other words, businesses in the hospitality industry, *see* U.S. Census Bureau, *2017 NAICS Definition, Sector 72*, https://www.census.gov/naics/?input=72&chart=2017&details=72 (explaining that this code refers to the "Accommodation and Food Services sector[, which] comprises establishments providing customers with lodging and/or preparing meals, snacks, and beverages for immediate consumption").

18. Most significant here, while most businesses had their PPP eligibility determined in accordance with the SBA's affiliation rules, Congress provided

7

different eligibility rules for hospitality businesses with 500 or fewer employees: The CARES Act provides that for such businesses, "the provisions *applicable to affiliations* under section 121.103 of title 13, Code of Federal Regulations, *or any successor regulation*, *are waived with respect to eligibility* for a covered loan." 15 U.S.C. § 636(a)(36)(D)(iv)(I) (emphasis added). And Congress repeated this rule with the Economic Aid Act's provisions governing Second Draw PPP loans: "The waiver described in paragraph (36)(D)(iv) shall apply for purposes of determining eligibility" of any hospitality business with 300 or fewer employees for Second Draw loans. 15 U.S.C. § 636(a)(37)(E).

## II. The SBA Contradicts Congress's Express Language and Imposes Affiliation Rules on Hospitality Businesses

19. The SBA initially recognized the significance of the CARES Act's waiver of affiliation rules: While the SBA's April 15, 2020 interim final rule noted that "[i]n most cases, a borrower will be considered together with its affiliates for purposes of determining eligibility for the PPP," it acknowledged that the CARES Act's waiver of "affiliation rules" for hospitality businesses "remain[s] in full force and effect." 85 Fed. Reg. at 20818 n.1. "As a result," the SBA noted, "the affiliation rules contained in section 121.301" and section 121.103 "*do not apply to these types of entities*." *Id.* (emphasis added).

8

20.    Just a few weeks later, however, the SBA proceeded to apply affiliation rules to hospitality businesses notwithstanding Congress's unequivocal instructions otherwise. On May 4, 2020, the SBA promulgated another rule—never codified in the Code of Federal Regulations—known as the "Corporate Group Maximum Rule." SBA, *Business Loan Program Temporary Changes; Paycheck Protection Program—Requirements—Corporate Groups and Non-Bank and Non-Insured Depository Institution Lenders*, 85 Fed. Reg. 26,324 (May 4, 2020). Without any significant elaboration, this rule simply provides that "businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate," and deems businesses to be "part of a single corporate group *if they are majority owned, directly or indirectly, by a common parent*." *Id.* at 26,325 (emphasis added). And remarkably, the SBA insisted this rule's treatment of corporate affiliates applies to *all* businesses, even those in the hospitality industry: Without any explanation or justification whatsoever, the SBA announced that "[b]usinesses are subject to this [Corporate Group Maximum] limitation *even if the businesses are eligible for the waiver-of-affiliation provision under the CARES Act*." *Id.* (emphasis added).

21.    On January 14, 2021, the SBA promulgated another regulation—which the agency refers to as its "Consolidated First Draw PPP IFR"—intended to incorporate the Economic Aid Act and consolidate in one place the myriad "interim

9

final rules (and important guidance)" the agency had issued over the prior nine months regarding eligibility for First Draw PPP loans. SBA, *Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act*, 86 Fed. Reg. 3692, 3692 (Jan. 14, 2021). In doing so, the SBA double downed on its defiance of the CARES Act's waiver of affiliation rules—again without offering any explanation. *See id.* at 3702 (restating the $20 million Corporate Group Maximum Rule and reiterating that "[b]usinesses are subject to this limitation even if the businesses are eligible for the waiver-of-affiliation provision under the CARES Act").

22. The same day, the SBA promulgated a regulation addressing Second Draw PPP loans. SBA, Business *Loan Program Temporary Changes; Paycheck Protection Program Second Draw Loans*, 86 Fed. Reg. 3712 (Jan. 14, 2021). This regulation acknowledged that, under the Economic Aid Act, "[t]he affiliation rules under 13 CFR 121.301(f) are waived with respect to eligibility for a Second Draw PPP Loan" for hospitality businesses with 300 or fewer employees. *Id.* at 3718. At the same time, however, the regulation adopted a Corporate Group Maximum Rule for Second Draw loans, this time with a $4 million aggregate cap. *Id.* at 3720. The regulation does not provide any detail on how this Corporate Group Maximum Rule works and does not directly address whether this Rule also purports to trump the

statutory waiver of affiliation rules: It simply provides that "Corporate group has the same meaning as in … the Consolidated First Draw PPP IFR." *Id.*

### III. The SBA Applies the Corporate Group Maximum Rule to Wrongfully Deny Forgiveness of CHH's Second Draw Loan

23. This case involves the SBA's denial of forgiveness of CHH's Second Draw PPP loan, for which CHH applied on May 29, 2021.

24. At that point, CHH had already successfully applied for a First Draw loan. CHH is one of a group of 98 family-owned entities (collectively known as the "Russell Group"), that together employ more than 1,100 individuals. But because CHH is a hospitality business—it is assigned a North American Industry Classification code beginning with 72 (722513)—and itself has fewer than 500 employees, it was plainly eligible for a First Draw loan under the CARES Act's waiver of affiliation rules. 15 U.S.C. § 636(a)(36)(D)(iv).

25. Accordingly, CHH applied for a $2 million Second Draw PPP loan, and CHH's lender, Citizens Trust Bank, approved and disbursed the loan on June 1, 2021.

26. On July 19, 2022, CHH filed PPP Loan Forgiveness Application Form 3508S, seeking full forgiveness of the Second Draw loan.

27. On November 21, 2022, CHH received the SBA's Final Loan Review Decision entirely denying forgiveness of the loan.[3] Notably, the SBA *did not dispute* that CHH used the Second Draw loan for the statutorily prescribed purposes—namely, to ensure the continued employment of its employees. *See* 15 U.S.C. § 636(a)(37)(J). Nor did it dispute that, pursuant to the statutory waiver of affiliation rules, CHH satisfied the 300-employee limit applicable to Second Draw loans; indeed, the SBA expressly "recommend[ed] denial even though borrower has a NAICS 72 waiver of the affiliation rules." Rather, the SBA rested its decision on a single ground—that CHH "exceeded corporate group limit at the time of disbursement."

28. On December 21, 2022, CHH timely appealed the SBA's Final Loan Review Decision to SBA's OHA.

29. On March 20, 2023, the OHA issued its decision affirming the SBA's Final Loan Review Decision.[4] Again, the OHA's conclusion relied solely on the Corporate Group Maximum Rule. The OHA explained that when CHH's Second Draw loan was disbursed on June 1, 2021, the affiliates in CHH's "corporate group" had already obtained about $3.4 million in Second Draw loans. Because CHH's $2

---

[3] CCH has attached a true and accurate copy of the SBA's Final Loan Review Decision as Exhibit C.

[4] CCH has attached a true and accurate copy of the OHA's decision as Exhibit D.

million loan put the "corporate group" total at $5.4 million (and thus over the $4 million maximum), the OHA affirmed the denial of forgiveness of CHH's entire $2 million loan. The OHA Decision, in other words, determined that CHH's affiliates rendered it ineligible for *any* Second Draw PPP loan.

IV. **The SBA's Decision to Apply the Corporate Group Maximum Rule to CHH Violates the Plain Statutory Text**

30. The SBA's application of the Corporate Group Maximum Rule to CHH is contrary to the plain text, purpose, and context of the CARES Act and the Economic Aid Act. It directly contravenes 15 U.S.C. §§ 636(a)(36)(D)(iv) and 636(a)(37)(E), which specifically waive the SBA's "provisions applicable to affiliations … with respect to [CHH's] eligibility" for PPP loans.

31. The SBA recognizes that the statutory waiver of affiliation rules applies to CHH and that CHH therefore falls under the 300-employee cap for Second Draw loans. Yet it concluded—without explaining why—that this statutory waiver does *not* apply to its Corporate Group Maximum Rule.

32. The SBA's unreasoned decision flies in the face of the statutory text. The waiver of affiliation rules applies broadly to the then-existing SBA affiliation rules *and "any successor regulation*." 15 U.S.C. §§ 636(a)(36)(D)(iv) (emphasis added). The Corporate Group Maximum Rule is plainly such a "successor regulation," since it imposes a cap on PPP Loans based on an entity's corporate

13

affiliates. Indeed, the Rule adopts the *same* affiliate test (majority ownership by a common parent) included in the *expressly waived* affiliation rules. *See* 13 C.F.R. §§ 121.103(a)(1), (c)(1), 121.301(f).

33. The SBA's decision also contradicts the underlying purpose of the statutory waiver of affiliation rules: In response to the dire circumstances faced by hospitality businesses and their employees, Congress sought to preserve such businesses' eligibility for PPP loans by directing the SBA to treat hospitality businesses as distinct entities *without regard to their affiliates*.

34. Because the SBA's application of the Corporate Group Maximum Rule to CHH violates Congress's command, its decision is "not in accordance with law" and "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C). The SBA's Final Loan Review Decision and the OHA Decision to affirm should therefore be set aside. 5 U.S.C. § 706(2)(A).

**V. The SBA's Manner of Applying the Corporate Group Maximum Rule Was Not Required by the Rule and Was Arbitrary and Capricious**

35. Beyond resting on the plainly unlawful Corporate Group Maximum Rule, the SBA's decision applied the Rule in an arbitrary and capricious manner not required by the Rule's sparse text.

36. First, to conclude that CHH's loan exceeded the $4 million cap, the SBA determined that CHH's affiliates had already obtained $3.4 million in Second

Draw loans. And this $3.4 figure includes an affiliate's $2 million Second Draw loan *that the SBA thinks is invalid and not forgivable* because that affiliate (combined with its affiliates) exceeds the 300-employee cap, and because that affiliate is not in the hospitality industry and (in the SBA's view) is therefore not subject to the statutory waiver of affiliation. Notably, if the SBA had not counted this purportedly invalid loan towards the $4 million cap, CHH's loan would have been eligible for forgiveness even under the Corporate Group Maximum Rule. This approach—not required by the text of the Rule—is arbitrary and capricious.

38. Second, the SBA concluded that CHH's *entire* loan was ineligible for forgiveness even though on *the SBA's view* CHH was *still* eligible for about $600,000 of Second Draw loans. Again, this approach is both inequitable and not required by the text of the Corporate Group Maximum Rule. Indeed, this approach implies that the SBA would deny forgiveness of a restaurant's entire $2 million PPP loan if, when that loan was disbursed, its affiliates had already collectively received $2,000,001 in loans—even if the restaurant had used the loan as intended to keep its employees on payroll in extremely difficult economic circumstances. This result is irreconcilable with both the statutory text, the purpose of the PPP, and elementary principles of fairness.

38. For each of these reasons, the SBA's decision to completely deny forgiveness of CHH's Second Draw loan was arbitrary, capricious, and (to the extent it

15

constituted an exercise of discretion at all) an abuse of discretion in violation of 5 U.S.C. § 706(2)(A). The SBA's Final Loan Review Decision and the OHA Decision to affirm should therefore be set aside. 5 U.S.C. § 706(2)(A).

**FIRST CLAIM FOR RELIEF (JUDICIAL REVIEW)**

39. This Court is authorized and empowered to review the SBA's Final Loan Review Decision and the OHA Decision for errors.

40. The SBA's Final Loan Review Decision and the OHA Decision both were erroneous as a matter of law, constituted arbitrary and capricious conduct by the SBA, were made based upon a rule established through an excess of statutory authorization, and constituted an abuse of discretion, all in violation of 5 U.S.C. § 706(2)(A), (C).

41. The Court should hold that the Final Loan Review Decision and the OHA Decision were unlawful, should set aside the Final Loan Review Decision and the OHA Decision, and should direct the SBA to grant forgiveness to CHH regarding its PPP Loan.

**SECOND CLAIM (DECLARATORY JUDGMENT)**

42. There is an actual and existing controversy between the parties as to the correctness of the SBA's decision to apply the Corporate Group Maximum Rule to deny forgiveness of CHH's Second Draw loan in its entirety.

43. The SBA's application of the Corporate Group Maximum Rule to CHH's Second Draw PPP loan was legal error, was arbitrary and capricious, was made in excess of SBA's statutory authority, and constituted an abuse of discretion in violation of 5 U.S.C. § 706(2)(A), (C).

44. CHH is therefore entitled to a judgment declaring that the Corporate Group Maximum Rule cannot be applied to businesses protected by the statutory waiver of affiliation rules, and declaring that the SBA's application of the Corporate Group Maximum Rule to CHH's Second Draw PPP loan was legal error, was arbitrary and capricious, was made in excess of SBA's statutory authority, and constituted an abuse of discretion.

## **PRAYER FOR RELIEF**

WHEREFORE, CHH respectfully prays that the Court grant it the following relief:

i. Grant CHH's Petition for Review;

ii. Reverse and set aside the Final Decision and OHA Decision, and direct the SBA to issue a new decision on CHH's forgiveness application forgiving its PPP Loan;

iii. Vacate the Corporate Group Maximum Rule and declare that it is not authorized by, and is contrary to, the CARES Act;

iv. Award costs and reasonable attorneys' fees to the extent permitted by law; and

v. Grant such other relief as this Court may deem just and proper.

Respectfully submitted, this 29th day of April, 2024.

*/s/ Eric S. Fisher*
Eric S. Fisher
Georgia Bar No. 250428
BARNES & THORNBURG LLP
3340 Peachtree Road N.E., Suite 2900
Atlanta, GA 30326-1092
Tel. (404) 264-4045
EFisher@btlaw.com

Kian J. Hudson
(*pro hac vice* application forthcoming)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
Tel. (317) 229-3111
Kian.Hudson@btlaw.com

*Counsel for Petitioner Concessions HH, JV*