IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CONCESSIONS HH, JV,

       Petitioner,

       *v.*

THE UNITED STATES SMALL
BUSINESS ADMINISTRATION,

       Respondent.

Civil Action No.

1:24-cv-01870-WMR

**RESPONDENT'S RESPONSE TO PETITIONER'S MOTION FOR
SUMMARY JUDGMENT**

Concessions HH, JV (Concessions) and its parent company, the Russell
Group, violated the Small Business Administration's (SBA) well-established
Corporate Group Rule (CGR) when they obtained over $4,000,000 of Paycheck
Protection Program (PPP) loans under the Economic Aid Act (EAA).  They knew
that one of the consequences for doing so was that their PPP loans would not be
eligible for forgiveness.  Despite this, Concessions sought to have its PPP loans
forgiven.  Following its clearly established rule, the SBA declined to do so.
Concessions administratively challenged the SBA's decision and the
administrative law judge (ALJ) affirmed.  Concessions now asks the Court to
order the SBA to forgive its PPP loans.  In support, Concessions argues that the
CGR conflicts with the affiliation waiver provision of the CARES Act; and that
the SBA applied the CGR in an arbitrary manner.

1

These arguments lack merit. *First*, the CGR does not conflict with the affiliation waiver provision because it merely limits the total amount in loans affiliated eligible borrowers can receive, while the Affiliation Rule concerns whether a borrower is eligible to receive a loan in the first place. Even more, Congress declined to eliminate the CGR and its application to businesses like Concessions when it reauthorized the PPP. *Second,* the CARES Act, EAA, and Small Business Act all gave the SBA broad authority to adopt the CGR and apply it to second-draw PPP loans. *Third*, the SBA's application of the Rule to Concessions was not arbitrary. The SBA used a consistent method to determine that the Russell Group obtained over $4,000,000.00 (an undisputed fact), and it correctly applied that method to conclude that the loans at issue here should not be forgiven. Accordingly, the Court should deny Concessions' motion for summary judgment. But even if the Court were to find that the SBA erred, the only appropriate remedy should be a remand to the SBA for reconsideration.

I.      BACKGROUND

A. The SBA's § 7(a) Loan Program and its Affiliation Rule

Section 7(a) of the Small Business Act ("§ 7(a)") "empower[s]" the SBA to guarantee general purpose loans to small businesses. 15 U.S.C. § 636(a). Section 7(a) matters here because "the PPP was not created as a standalone program; instead it was added to § 7(a) …." *In re Gateway Radiology Consultants, P.A.*, 983

F.3d 1239, 1249 (11th Cir. 2020) (*citing* CARES Act, § 1102, 134 Stat. at

286 (amending § 7(a)); *see also* 15 U.S.C. § 636(a)(36)(B)).

The Small Business Act also broadly authorizes the SBA to "make such rules

and regulations" as the agency "deems necessary" to implement the loan

program, and to "take any and all actions" the agency "determines . . . are

necessary or desirable in making, servicing, compromising, modifying,

liquidating, or otherwise dealing with or realizing on loans[.]"  15 U.S.C. §

634(b)(6), (b)(7).  Indeed, Congress delegated "extraordinarily broad powers" to

the SBA to "accomplish [its] objectives…."  *See Gateway Radiology*, 983 F.3d at

1247-48 (citing *SBA v. McClellan*, 364 U.S. 446, 447 (1960)).

As its name suggests, the SBA serves only small businesses.  15 U.S.C. §

632(a)(1), (2)(A); 13 C.F.R. §§ 120.100(d), 121.201.  Therefore, to ordinarily qualify

for a § 7(a) loan, an applicant must meet the size standards for a "small" business

set forth in the Act and SBA regulations. 15 U.S.C. § 632(a)(1), (2)(A); 13 C.F.R. §§

120.100(d), 121.201.  The Small Business Act "grants the SBA broad authority to

craft general criteria for establishing which entities qualify as small business

concerns, as well as to make particularized size assessments."  *DSE, Inc. v. United

States*, 169 F.3d 21, 25 (D.C. Cir. 1999).  Those criteria include "affiliation rules"

that determine when an applicant is affiliated with another entity, such that the

two are properly regarded as a single, larger entity (in terms of number of

employees or revenue) for the purpose of determining whether the applicant qualifies as an eligible "small" business.  *See* 13 C.F.R. §§ 121.103; 121.301(f).

### B.  The CARES Act, the PPP, and Waiver of SBA's Affiliation Rule

In 2020, in response to the economic impact of the COVID-19 pandemic on small businesses, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which *inter alia*, created the PPP program to extend relief to small businesses experiencing economic hardship.  15 U.S.C. § 636(a)(36); Pub. L. 116-136, 134 Stat 281.  Subparagraph 636(a)(36)(B) stated that "[e]xcept as otherwise provided in this paragraph, the [SBA] *may* guarantee [PPP] loans," issued by private lenders, "under the same terms, conditions, and processes as [other] loan[s] made under" § 7(a). 15 U.S.C. § 636(a)(36)(B) (emphasis added); *see id.* § 636(a)(36)(F)(ii).

The statute then detailed the ways in which PPP loans differ from other § 7(a) loans.  15 U.S.C. § 636(a)(36)(D)-(W).  Relevant here, the CARES Act waived the SBA's Affiliation Rule for businesses, like Concessions, that had been assigned a North American Industry Classification System (NAICS) code beginning with 72—restaurants and hotels.  The pertinent part of the Act provides as follows:

> (iv) Waiver of affiliation rules:
> During the covered period, the provisions applicable to affiliations under section 121.103 of title 13, Code of Federal Regulations, or any

successor regulation, are waived with respect to eligibility for a
[Paycheck Protection Program] loan for—
> (I) any business concern with not more than 500 employees
> that, as of the date on which the covered loan is disbursed, is
> assigned a North American Industry Classification System code
> beginning with 72;

15 U.S.C. § 636(a)(36)(D)(iv)(I) (emphasis removed).  Neither the CARES Act, nor

Congress's subsequent legislation, altered or amended the SBA's longstanding

Affiliation Rule except to the extent set forth in Section 636(a)(36)(D)(iv).  *See*

*generally* CARES Act, § 1102; 134 Stat. at 286-94.

The CARES Act also enlarged the $5,000,000 cap applicable to other § 7(a)

loans, providing that the "*maximum amount*" of a PPP loan was to be "*the lesser*

*of*" (1) the borrower's average monthly payroll costs for the preceding year,

multiplied by 2.5, plus the balance of the borrower's eligible SBA disaster loans;

or (2) $10,000,000.  15 U.S.C. § 636(a)(36)(E) (emphasis added).  Congress initially

authorized the SBA to guarantee up to $349 billion in PPP loans by June 30, 2020.

CARES Act § 1102(b)(1); 15 U.S.C. § 636(a)(36)(A)(ii)-(iii), (B).

The CARES Act also directed the SBA to "issue regulations to carry out this

title"—that is, regulations for PPP loans.  CARES Act, § 1114, 134 Stat. at 314

(codified at 15 U.S.C. § 9012).  And Congress directed the SBA to issue

regulations no later than "15 days after the date of the enactment of this Act"

without adhering to the notice requirement of the rule making process.  *Id.*

Following Congress' directive, the SBA issued regulations to help execute the PPP program. *See e.g.* 85 Fed. Reg. 23450 (PPP Requirements—Promissory Notes, Authorizations, Affiliation, and Eligibility); 85 Fed. Reg. 26324 (PPP Program Requirements—Corporate Groups and Non-Bank and Non-Insured Depository Institution Lenders). The SBA also established a highly streamlined PPP loan-origination process based on borrower's self-certification of eligibility. *See* 85 Fed. Reg. at 20,812, 20,814-16; SBA Form 2483. Because borrowers' applications and supporting documentation were maintained by lenders, not sent to the SBA, *see* 85 Fed. Reg. at 20,814, the SBA did not (and as a practical matter could not) make independent PPP borrower eligibility determinations at the loan-origination stage.

The SBA launched the PPP on April 3, 2020. SBA Press Release No. 20-30. The program's termination date was June 30, 2020, but the entire $349 billion authorized by Congress was exhausted in less than two weeks because of the high demand for PPP loans. CARES Act § 1102(b) (termination date); SBA Press Release No. 20-32 (exhaustion of funds).

## C. The Economic Aid Act (EAA)

The PPP expired on August 8, 2020. *See* Act of July 4, 2020, Pub. L. No. 116-147, 134 Stat. 660. However, the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, (Consolidated Appropriations Act, 2021, Div. N,

Title III, Pub. L. No. 116-260, 134 Stat. 1182, 1993–2052) (Dec. 27, 2020)) (the

"Economic Aid Act," or "EAA"), reauthorized and extended the program to

March 31, 2021, and added another $147.5 billion in loan authority. EAA §

323(a)(1). Important here, the EAA also added a new section to the § 7(a)

program, 15 U.S.C. § 636(a)(37), that authorized SBA to guarantee so-called

"second-draw" PPP loans to certain businesses that had already received "first-

draw" PPP loans under the CARES Act, under the same terms and conditions as

first-draw loans, except as the EAA otherwise provided. EAA § 311(a); 15 U.S.C.

§ 636(a)(37)(B). The EAA established a "[m]aximum loan amount" for second-

draw loans based on the CARES Act's payroll-based formula for first-draw loans,

but with a smaller cap of $2,000,000. *Id.* § 636(a)(37)(C). The EAA also specified

that the Affiliation Waiver applicable to first-draw loans would also apply to

second-draw PPP loans, "for purposes of determining eligibility[,]" though it

lowered the number of employees a NAICS Code 72 business could have while

qualifying for the Waiver from 500 to 300 employees. *Id.* § 636(a)(37)(E).

Like the CARES Act, the EAA gave the SBA "emergency rulemaking

authority" and directed the SBA to issue regulations implementing the EAA

"[n]ot later than 10 days after" the EAA's enactment, without regard to the

notice-and-comment requirements of 5 U.S.C. § 553(b). EAA § 303.

### D. Forgiveness of PPP Loans

The CARES Act also provides for the forgiveness of PPP loans, stating that "[a]n eligible recipient" of a PPP loan "shall be eligible for forgiveness" "in an amount equal to" the sum of its covered payroll costs and other allowable expenses, but not to exceed the principal amount of the loan.  15 U.S.C. § 636m(b) & (d)(1).  To obtain forgiveness, an eligible borrower submits an application and supporting documents to its lender, which then determines if the borrower is entitled to forgiveness under the Act, and, if so, submits a request for payment to the SBA.  15 U.S.C. § 636m(g); *see* 85 Fed. Reg. 38,304, 38,306 (June 26, 2020).   The SBA then remits the appropriate amount to the lender—subject, however, to any SBA review of the loan.  15 U.S.C. § 636m(c)(3); 85 Fed. Reg. at 38,306.  If the agency determines during a review that "an action by the borrower has resulted in its receipt of a PPP loan that did not meet program requirements," it denies forgiveness of the loan.  85 Fed. Reg. 33,010, 33,012-13 (June 1, 2020)).

### E.  The Corporate Group Rule

While Congress expressly exempted business like Concessions from the SBA's Affiliation Rule to be eligible for PPP loans, it did not do the same for the SBA's Corporate Group Rule—an altogether different rule that sets a cap on the amount of PPP loans a corporate group can borrow.

On May 4, 2020, the SBA published the Corporate Group Rule.  85 Fed. Reg. 26,324 (May 4, 2020). Under the Rule, "businesses that are part of a single

corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate." *Id.* at 26,325.  The Rule defined a "corporate group" as businesses "owned, directly or indirectly, by a common parent." *Id.*  The Rule advised borrowers that loans received in disregard of its terms "will not be eligible for forgiveness." *Id.*

The SBA explained that the Rule's purpose was to "preserve the limited resources available to the PPP . . . in light of the previous lapse of PPP appropriations and the high demand for PPP loans[.]" *Id.*  The SBA "determined that limiting the amount of PPP loans that a single corporate group may receive [would] promote the availability of PPP loans to the largest possible number of borrowers, consistent with the CARES Act." *Id.*  It also concluded that it had authority to issue an "aggregate limitation" on the amount of PPP loans issued to a single corporate group, because the terms of the CARES Act "specify a 'maximum'—but not a minimum—loan amount" for each borrower that the SBA "may" guarantee.  *Id* .at n. 1 (citing 15 U.S.C. § 636(a)(36)(B), (E)).

The SBA also noted that its "affiliation rules, which relate to an applicant's *eligibility* for PPP loans" as well as "any waiver of those rules under the CARES Act" would "continue to apply *independent* of this [aggregate] limitation." *Id.* at 26,325 (emphasis added).  Conversely, applicants were subject to the CGR "even if the businesses are eligible for the waiver-of-affiliation provision under the

CARES Act or are otherwise not considered to be affiliates under SBA's affiliation rules." *Id.*  In other words, the Rule applied to all eligible borrowers, regardless of whether the SBA considered affiliation in determining those borrowers' eligibility to participate in the program.

The CGR was in effect when Congress passed the EAA, and the SBA continued to apply it to second-draw loans to "promote the availability of PPP loans to the largest possible number of borrowers[.]"  86 Fed. Reg. 3712, 3716 (Jan. 14. 2021).  Consistent with the lower maximum individual loan amount authorized by the EAA for second-draw loans, SBA capped the total amount a single corporate group could receive in second-draw loans at $4,000,000.00.  *Id.* at 3716, 3720.

## II.    PROCEDURAL HISTORY AND UNDISPUTED FACTS

Concessions makes two arguments: (1) that the CGR violated the waiver-of-affiliation-for-eligibility provision of the CARES Act; and (2) that, in any event, the SBA's application of the CGR here was arbitrary and capricious in violation of the Administrative Procedures Act (APA).  The undisputed material facts related to these arguments are as follows:

Concessions is in the food-service business; it is therefore a part of the hospitality industry, and it has a NAICS code beginning with 72.  Doc. 17-2 at ¶¶ 1-2 (ECF 13-1 at 57-59; 13-3 at 17-21, 350-51).  It is also one of 98 entities that

forms the Russell Group. *Id.* at ¶ 3 (ECF 13-3 at 350). The Russell Group, and its subsidiaries, employs over 1,100 employees and would not ordinarily be considered a small business eligible for SBA programs. *Id.* at ¶ 3-4 (ECF 13-3 at 350); *see also* 13 C.F.R. §§ 121.103; 121.301(f). However, the CARES Act waived the SBA's Affiliation Rule and made the Russell Group eligible for PPP loans for its businesses in the hospitality industry. *Id.* at ¶ 4 (ECF 13-3 at 350). The Russell Group, including Concessions, borrowed $8,597,783.48 in first-draw PPP loans under the CARES Act. *Id.* at ¶ 6 (ECF 13-3 at 351). The Russell Group sought and received forgiveness for all its first-draw PPP loans. *Id.* at ¶ 7 (ECF 13-3 at 351, 357). Accordingly, this case is not about first-draw loans under the CARES Act. *Id.*

Rather, this case is about the Russell Group's second-draw PPP loans under the EAA. *See generally id.* at ¶ 7-20. Altogether, the Russell Group obtained $5,409,573.82 in second-draw PPP loans. *Id.* at ¶ 14 (ECF 13-3 at 351). Of that, Concessions received $2,000,000.00. *Id.* at ¶ 11 (ECF 13-5 at 1). Concessions sought to have its part of the Russell Group loans forgiven and the SBA denied its application on the basis that the Russell Group had violated the CGR when it borrowed over $4,000,000.00 in second-draw EAA loans. *Id.* at ¶¶ 18, 21 (ECF 13-1 at 17-18; 13-3 at 351-52; 13-5 at 1).

11

Concessions appealed the SBA's decision.  *Id.* at ¶ 26 (ECF 13-4 at 1).  The ALJ found that the Russell Group, that is Concessions and its affiliates, borrowed over $1,400,000.00 above the maximum permitted for second-draw loans for corporate groups.  *Id.* at ¶ 29 (ECF 13-8 at 6).  It then found that Concessions failed to show that the SBA's denial of forgiveness "was based on clear error" and it affirmed the SBA's decision.  *Id.* at ¶¶ 30-31 (ECF 13-8 at 6).  Concessions now seeks judicial review of the ALJ's decision.  *Id.* at ¶ 32 (ECF 1).

## III.    ARGUMENT AND CITATION TO AUTHORITY

### A. Standard of Review

The Court "must exercise [its] independent judgment in deciding whether the [SBA] has acted within its statutory authority" by adopting the CGR.  *Loper Bright Enter.s v. Raimondo*, 144 S. Ct. 2244, 2273 (2024).  Where, as here, the relevant statute confers discretionary authority on the agency, the Court "fulfill[s] [its] obligations under the APA" by "identify[ing] and respect[ing]" that delegation.  *Id.* at 2268; *see also id.* at 2273.

The Court may only set aside an agency action under the APA where it finds that the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996).  The standard of review under the APA is "exceedingly deferential" to the agency.  *Fund for Animals*, 85 F.3d at 541.  It

12

merely requires agencies to engage in "reasoned decisionmaking." *Dept. of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020) (citations omitted). Indeed, "under this narrow standard of review … it is not the role of the reviewing court to substitute its judgment for the judgment of the agency." *Id.* (citing *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009).

## B. The Corporate Group Rule Does Not Violate the Waiver-of-Affiliation for Eligibility Provision of the CARES Act or the EAA

Concessions does not, and indeed cannot, dispute that the Russell Group violated the CGR when its companies, including Concessions, borrowed over $4,000,000.00 in second-draw EAA loans. Doc. 17-2 at ¶¶ 8 & 14 (ECF 13-3 at 351). Instead, it argues that the CGR contravenes the affiliation waiver provision of the CARES Act and the EAA. Concessions is wrong on several fronts.

### 1. The language of the waiver provision speaks only to eligibility.

In determining whether the CARES Act bars the CGR, the "starting point is the language of the statute" itself. *Diamond v. Diehr*, 450 U.S. 175, 182 (1981); *see also EEOC v. STME, LLC*, 938 F.3d 1305, 1313-14 (11th Cir. 2019). And, unless otherwise defined, "words will be interpreted as taking their ordinary, contemporary, common meaning." *Id.* Here, the plain language of the CARES Act and the EAA belies Concessions' argument.

15 U.S.C. § 636(a)(36)(D)(iv), titled "waiver of affiliation rules," states that "[d]uring the covered period, the provisions applicable to affiliations under

13

section 121.103 of title 13, Code of Federal Regulations, or any successor regulation, are waived *with respect to eligibility* for a [Paycheck Protection Program] loan" for business "with not more than 500 employees that" is assigned a NAICS code beginning with 72. (emphasis added).  And because the EAA, in most respects, was a continuation of the CARES Act, Congress incorporated the waiver provision in the EAA.  15 U.S.C. § 636(a)(37)(E).  By its plain language, the CARES Act and the EAA expressly waived the SBA's affiliation rules only "with respect to eligibility" for PPP loans — not with respect to administration, guarantee, or forgiveness of those loans.  *Id.*

Moreover, the SBA's Affiliation Rule and Corporate Group Rule perform distinctly different functions.  The Affiliation Rules concern whether an entity is *eligible* for a § 7(a) loan in the first place.  The CGR, by contrast, sets a cap on the total amount that related entities may receive, without categorically prohibiting any entity from participating in the PPP.  Simply put, these rules are not the same statutorily or functionally.

Despite this, Concessions argues that the CGR is a "successor regulation" of the Affiliation Rule and, therefore, it too is waived.  Doc. 17-1 at pp. 20-21.  Concession argues that because the SBA used the same language to define large businesses for both rules, the CGR is necessarily a "successor regulation" of the

Affiliation Rule.  Doc. 17-1 at pp. 20-21.  Again, this argument ignores the text of the statute and the function of the Affiliation Rule.

In the CARES Act, Congress waived "the provisions applicable to affiliations under" 13 C.F.R. § 121.103 "or any successor regulation … with respect to eligibility for a covered loan." 15 U.S.C. § 636(a)(36)(D)(iv)(I).  First, Concessions ignores the "with respect to eligibility" language.  *United States v. Aldrich*, 566 F.3d 976, 978 (11th Cir. 2009) ("[c]ourts' construction should avoid tendering any clause, sentence, or word superfluous, void, or insignificant.").  Second, this Court must read words "in their context and with a view to their place in the overall statutory scheme," because a court's duty, "after all, is to construe statutes, not isolated provisions."  *King v. Burwell*, 576 U.S. 473, 486 (2015) (citations and quotations omitted).  Read in context of the sentence, the statue waives successor regulations for the Affiliation Rule, that is 13 C.F.R. § 121.103, with respect to eligibility for PPP loans.

Section 121.103 outlines SBA's "general principles of affiliation" and specifies that the size standards and bases for affiliation applicable to § 7(a) loans are set out in § 121.301. *See* 13 C.F.R. § 121.103(a)(6), (8).  Section 121.301 in turn provides that in determining an entity's size—and thus its eligibility for a § 7(a) loan— SBA considers the size (based on receipts, employees, or applicable alternate size standard) of the applicant "and all of its domestic and foreign affiliates[.]"

13 C.F.R. § 121.301(f)(6) (2020). In other words, the affiliation provisions ensure that SBA loans go to businesses that are, in fact, small. By waiving those regulations for certain categories of entities "with respect to eligibility," the CARES Act makes entities that would otherwise be too large to participate in the § 7(a) program eligible for PPP loans. 15 U.S.C. § 636(a)(36)(D)(iv). Accordingly, the CARES Act, the affiliation rule and its "successor regulations" all concern *eligibility* for PPP loans and nothing more.

The CGR does not conflict with the affiliation waiver provision because the CGR does not restrict eligibility. It does not close the door to participation in the PPP—it simply requires owners of multiple eligible businesses to exercise judgment about how to allocate the loans SBA made available among their businesses. Concessions' argument fails to recognize the distinction between a limit on loan amount (like the CGR) and a limit on eligibility (like the Affiliation Rule). Again, it's worth noting here that had the SBA not waived its Affiliation Rule (as directed by the CARES Act and the EAA), the Russell Group, including Concessions, would not have been otherwise eligible for PPP loans. Doc. 17-2 at ¶¶ 3-4.

Even more, the SBA specifically addressed the Affiliation Rule when it issued the CGR. The SBA provided the statutory basis for the Rule and emphasized that the Rule does not compromise *eligibility* created by the waiver of its

16

Affiliation Rule.  85 Fed. Reg. 26,325 (May 4, 2020).  In other words, when it issued the CGR, the SBA made clear that the CGR was distinct and separate from the Affiliation Rule.

So, the plain language of the statue is clear, and the SBA's regulations are clear—the Affiliation Rule and the CGR address two different aspects of the PPP and serve two different functions.  Yet, Concessions asks the Court to ignore plain language of the law and the regulation and conflate the two rules.  For all the reasons discussed above, the Court should decline to do so.

### 2.  Congress authorized the SBA to enact the Corporate Group Rule.

By housing the CARES Act in §7(a) of the Small Business Act, Congress delegated "extraordinarily broad powers" to the SBA to "make such rules and regulations" the agency "deems necessary" to implement the loan program.  15 U.S.C. § 634(b)(6), (b)(7); *Gateway Radiology*, 983 F.3d at 1247-48.  Even more, both the CARES Act and the EAA directed the SBA to "issue regulations" to disburse PPP loans expeditiously and without adhering to the notice requirements of the rule making process.  CARES Act, § 1114, 134 Stat. at 314 (codified at 15 U.S.C. § 9012); EAA § 303.  Accordingly, the SBA had broad statutory authority to issue the CGR.

The SBA also had discreet statutory authority to do so.  The CARES Act provides that SBA "may" guarantee second-draw loans to eligible entities up to a

*maximum* of the borrower's payroll-based amount or $2 million, whichever is less.  15 U.S.C. § 636(a)(77)(B)–(C).  And it is well-established that "[t]he word 'may' customarily connotes discretion."  *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 346 (2005).  Thus, even when an entity is eligible for a guaranteed loan, the SBA retains discretion to decide whether to guarantee it. The Corporate Group Rule is merely an exercise of that discretion.

In any event, the SBA's interpretation of the CARES Act and the EAA to issue the CGR is the type of contemporaneous and consistent interpretation that may be "especially useful in determining the statute's meaning."  *Loper Bright*, 144 S. Ct. at 2262.  Respect for the SBA's interpretation of a statute is "especially warranted" when the agency adopted it "roughly contemporaneously with enactment of the statute and remained consistent over time."  *Id.* at 2247.  That is the case here.  The SBA promulgated the CGR shortly after the CARES Act was passed.  Therefore, the SBA's interpretation of the CARES Act to allow for a limit on the loan amount is entitled to deference.

In sum, the SBA had statutory authority to issue the CGR.  Additionally, the CGR serves a different function than the Affiliation Rule and, as a result, is not a "successor regulation" of the latter.  Therefore, the CGR does not conflict with the waiver-of-affiliation provision of either the CARES Act or the EAA.  And Petitioner's motion for summary judgment on this basis should be denied.

### 3. Congress sanctioned the Corporate Group Rule with the EAA.

Even if the CARES Act left any question about the SBA's authority to implement the CGR to NAICS Code 72 businesses, Congress confirmed the Rule's validity in the EAA. "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978); *see also N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 535 (1982) ("Where 'an agency's statutory construction has been fully brought to the attention of the public and the Congress, and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned.'" (citation omitted)).

The *Lorillard* presumption disposes of Concessions' arguments here. The SBA first issued the CGR on May 4, 2020. 85 Fed. Reg. 26,324. The CARES Act PPP program expired on August 8, 2020. Pub. L. No. 116-147, 134 Stat. 660. Then, on December 27, 2020, Congress reauthorized (and refunded) the PPP through the EAA. EAA § 323(a)(1). In other words, Congress was fully aware of the CGR when it enacted the EAA and left the CGR untouched. Moreover, the EAA did nothing to unsettle the SBA's authority to provide less than the maximum loan amount authorized by the CARES Act. To the contrary, the EAA added

maximum loan amount calculations for second-draw PPP loans that are modeled on the same payroll-based formula as in § 636(a)(36)(E).  EAA §§ 311, 313 (adding 15 U.S.C. § 636(a)(36)(V), (37)(B)).

Even more, the EAA made specific changes to both the maximum loan calculation for NAICS Code 72 business and the affiliation waiver applicable to those businesses, but it did nothing to prohibit SBA from applying the CGR to those businesses.  For example, the EAA increased the multiplier for calculating the *maximum* allowable second-draw loan for NAICS Code 72 businesses and decreased the total number employees such businesses could have while qualifying for the affiliation waiver, which continued to apply only "for purposes of determining eligibility."  *See* EAA § 311 (adding 15 U.S.C. § 636(a)(37)(B) and (37)(E)).  Again, it made these adjustments without restricting the CGR.  Accordingly, the appropriate inference under *Lorillard*, 434 U.S. at 580, and *Bell*, 456 U.S. at 535, is that the EAA represents Congress' affirmative decision to ratify the SBA's conclusion that the SBA could issue and enforce the CGR without running afoul of the CARES Act.

**C. The SBA's Decision Not To Forgive Concessions' PPP Loans, After Concessions Violated the CGR, Was Not Arbitrary and Capricious.**

Despite violating the SBA's Corporate Group Rule, and knowing that its PPP loans would not be forgiven for doing so, Concessions nevertheless argues that the SBA's decision not to forgive its second-draw loans violated the APA by

being arbitrary.  Doc. 17-1 at pp. 24-29.  Concessions argues that the SBA acted

arbitrarily when it considered a $2,000,000.00 loan that H.J. Russell—one its

sister-companies under the Russell Group umbrella—obtained because H.J.

Russell was never eligible for a PPP loan to begin with.  *Id.* at pp. 24-26.  In other

words, the SBA should simply ignore another Russell Group company's ill-

gotten PPP loans.  Petitioner also argues that the SBA acted arbitrarily when it

declined to not partially forgive the $4,000,000.00 corporate group maximum that

they were allowed to borrow—presumably including H.J. Russell's ill-gotten

loans.  *Id.* at 26-29.  These arguments too lack merit.

"The APA's arbitrary-and-capricious standard requires that agency action be

reasonable and reasonably explained."  *FCC v. Prometheus Radio Project*, 592 U.S.

414, 423 (2021).  "Judicial review under that standard is deferential, and a court

may not substitute its own policy judgment for that of the agency."  *Id.*  A court

simply ensures that the agency has acted within a zone of reasonableness and, in

particular, has reasonably considered the relevant issues and reasonably

explained the decision."  *Id.* (citing *FCC* v. *Fox Television Stations, Inc.*, 556 U. S.

502, 513-514 (2009)).

Here, the SBA's decision is reasonable based on the record, and the SBA

reasonably explained its decision.  The undisputed facts in the record here are

that Concessions is one of 98 affiliated businesses that form the Russell Group,

21

that the Russell Group collectively employed over 1,100 individuals, and that the CGR therefore covered the Russell Group.  Doc. 17-2 at ¶¶ 3-4 (ECF 13-3 at 350). Also undisputed is the fact that the Russell Group violated the CGR when it borrowed over $4,000,000.00 in second-draw PPP loans.  *Id.* at ¶¶ 8-14 (ECF 13-3 at 351).  Indeed, before borrowing second-draw loans, the Russell Group (including Concessions), obtained first-draw PPP loans, complied with the CGR, sought forgiveness of those loans, and the SBA forgave those loans.  *Id.* at ¶¶ 6-7 (ECR 13-3 at 351, 357).  And, by the time Russell Group borrowed second-draw loans under the EAA, the CGR was well-established and sanctioned by Congress. Also well-established was the SBA's admonition that failure to comply with the CGR would result in "loans not [being] eligible for forgiveness."  85 Fed. Reg. 26,325.

Moreover, the SBA explained that the Russell Group companies were affiliated because they had "common ownership" and "common management … as disclosed and attested on Borrower's addendums to Form 3511."  Doc. 17-2 at ¶ 19 (ECF 13-5 at 1).  It is also undisputed that Concessions is one of 98 affiliated companies that form the Russell Group.  *Id.* at ¶ 3 (ECF 13-3 at 350).  Thus, the SBA followed well-established definitions for affiliation, found that these Russell Group affiliated companies were subjected to the CGR, and denied forgiveness because Russell Group affiliated companies violated the CGR.  Accordingly, the

SBA did not act arbitrarily by following its well-established, and publicized, rules.

Concessions does not dispute any of this. Doc. 17-2 at ¶¶ 18-19. Instead, it argues that the SBA should not have considered the ill-gotten loan that H.J. Russell obtained. Doc. 17-1 at pp. 24-25. But, as discussed above, in section I(B) & (D), companies apply to lenders for PPP loans (not the SBA), and as a practical matter, the SBA was unaware that H.J. Russell had not been entitled to receive its EAA loans until the Agency reviewed the information Concessions provided in its application for forgiveness. *See* 85 Fed. Reg. at 20,812, 20,814-16; Doc. 17-2 at 19 (ECF 13-5 at 1). The Russell Group should not be able to benefit both from being able to obtain a loan for which it is not eligible while still treating that loan as if it was never made.

Concessions also argues that the SBA should have forgiven the $4,000,000.00 maximum for second-draw loans that the Russell Group obtained. Doc. 17-2 at pp. 26-29. In other words, Concessions believes that it should still receive the benefit of a partial forgiveness despite its knowing violation of the CGR. However, as discussed above at Sections I(A)&(B), the SBA has "extraordinarily broad" statutory authority to fashion remedies—whether that be partial denial or full denial. *Gateway Radiology*, 983 F.3d at 1247-48 (Congress gave the SBA "extraordinarily broad powers."). Moreover, when it enacted the EAA, Congress

was aware of the sanction the SBA would impose for violating the CGR and Congress left the SBA's rule untouched.  For these reasons, the SBA did not act arbitrarily when it declined to forgive Concessions' second-draw loans.

### D. Concessions is Not Entitled to the Relief it Seeks.

Concessions asks the Court to "direct the SBA to issue a new decision forgiving [its] second-draw PPP Loan…"  Doc. 17-1 at p. 29.  Such relief is neither appropriate nor available against the SBA, even if the Court were to agree with Concessions arguments on the merits.

Except in rare situations, if a reviewing court finds an agency action erroneous, it "[must] set aside the agency's action and remand the case—even though the agency . . . might later . . . reach the same result for a different reason."  *FEC v. Akins*, 524 U.S. 11, 25 (1998).  Here, the appropriate remedy would be, at most, a remand.  Because the SBA determined that the Russell Group violated the CGR, it has not had the opportunity to determine whether Concessions' second-draw loans would be otherwise forgivable absent the Rule. It would therefore be premature for the Court to decide whether Concessions is entitled to full forgiveness of its second-draw loan without the SBA first determining the same.  *Smith v. Berryhill*, 587 U.S. 471, 488 (2019) ("a federal court generally goes astray if it decides a question that has been delegated to an agency if that agency has not first had a chance to address the question.").

24

## IV.    CONCLUSION

For the above stated reasons, the Court should deny Petitioner's motion for summary judgment and enter judgment in Respondent's favor as a matter of law.

                         Respectfully submitted,

                         RYAN K. BUCHANAN
                             *United States Attorney*
                             *600 U.S. Courthouse*
                             *75 Ted Turner Drive SW*
                             *Atlanta, GA 30303*
                             *(404) 581-6000  fax (404) 581-6181*


                         /s/ RODNEY H. ATREOPERSAUD
                             *Assistant United States Attorney*
                         Georgia Bar No. 309454
                         Rodney.Atreopersaud@usdoj.gov

**Certificate of Compliance**

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing brief has been prepared using Book Antiqua, 13-point font.

This 23rd day of December, 2024.

/s/*RODNEY H. ATREOPERSAUD*
*Assistant United States Attorney*

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

December 23, 2024

/s/ *RODNEY H. ATREOPERSAUD*
RODNEY H. ATREOPERSAUD
*Assistant United States Attorney*