IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CONCESSIONS HH, JV,<br><br>    Petitioner,<br><br>    v.<br><br>THE UNITED STATES SMALL BUSINESS ADMINISTRATION,<br><br>    Respondent. | CIVIL ACTION NO.<br>1:24-cv-01870-WMR |

## ORDER

Before the Court is Petitioner Concessions HH, JV's ("CHH") Motion for Summary Judgment, [Doc. 17]. Additionally, though the Court denied Respondent United States Small Business Administration's ("SBA") Motion for Extension of Time to File Cross-Motion for Summary Judgment [Doc. 22], the Court previously stated that it would still consider granting summary judgment in favor of Respondent pursuant to Federal Rule of Civil Procedure 56(f) and accept related briefing. [Doc. 26]. For the reasons discussed herein, Petitioner's Motion is **DENIED**.

**I.    BACKGROUND**

    **A. COVID-19 Pandemic and Related Congressional Acts**

In March of 2020, the world was forever changed with the spread of COVID-19. The widespread pandemic had significant consequences, including crippling the global economy. Public health measures, including social distancing and lockdowns,

1

kept the masses at home and prevented people from frequenting in-person businesses. In an effort to prevent millions of small businesses from going out of business, the United States government took action.

### i.     First-Draw[1] PPP Loans

On March 27, 2020, then-President Trump signed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") into law, which provided emergency assistance for businesses affected by the pandemic. Pub. L. 116–136, 134 Stat 281; 15 U.S.C. § 636(a)(36).  Relevant to the instant case, such relief included a Paycheck Protection Program ("PPP") loan. PPP loans were created by amending Section 7(a) of the Small Business Act to authorize the Small Business Administration to issue forgivable loans to eligible businesses. Among other expansive changes, the CARES Act waived the SBA's Affiliation Rule for restaurant and hospitality businesses with respect to a PPP loan. 15 U.S.C. § 636(a)(36)(D)(iv) (emphasis removed).

This meant that so long as a business in the hospitality industry employed fewer than 500 employees, it was eligible for a PPP loan for "any business concern…", and all existing or "successor" regulations were waived as to the covered loans. *Id.*

---

[1] At the time of enactment, these loans were simply referred to as PPP loans because there was no expectation at the time that a second round of such loans would be necessary. Because a second round of PPP loans would later be issued to small businesses, these initial loans are now referred to as "First-Draw" PPP loans. This Court will accordingly refer to PPP loans issued before December of 2020 as "First-Draw" PPP loans and those issued after December 2020 as "Second-Draw" PPP loans.

And, the CARES Act provided that an "eligible recipient shall be eligible for forgiveness of indebtedness on a covered loan in an amount equal to the sum of the . . . costs incurred and payments made during the covered period" for expenses and payments on items such as payroll costs and rent. 15 U.S.C. § 636m(b).

The CARES Act also directed the SBA to "issue regulations to carry out" the dispersal of PPP loans. 15 U.S.C. § 9012. In an attempt to maximize efficiency, the SBA issued a regulation which created a self-certification policy to determine eligibility for a PPP-loan. 85 Fed. Reg. at 20,812, 20,814-16. Loan applications were sent to lenders, not the SBA, meaning that it could not make initial eligibility determinations.

### ii. Second-Draw PPP Loans

With the American economy still reeling from the pandemic, Congress enacted the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the "Economic Aid Act," or "EAA"), which reauthorized and extended the PPP loan program to March 31, 2021, and added another $147.5 billion in loan authority. *See* Pub. L. 116-260. The EAA also added a new section to Section 7(a) of the Small Business Act that authorized the SBA to guarantee so-called "Second-Draw" PPP loans to certain businesses that had already received "first-draw" PPP loans under the CARES Act. 15 U.S.C. § 636(a)(37). Businesses could acquire loans generally

under the same terms and conditions as first-draw loans, except subject to additional restrictions that the EAA provided. 15 U.S.C. § 636(a)(37)(B).

Relevant to the instant case, only a hospitality business with 300 or fewer (a decrease from the initial 500) employees could obtain a second-draw loan and this second loan could not exceed $2 million (rather than the $10 million limit for first-draw loans). 15 U.S.C. § 636(a)(37)(C);(a)(36)(E);(a)(37)(A)(iv). However, the eligibility for complete forgiveness of the loan and the waiver of affiliation provisions remained intact. 15 U.S.C. § 636(a)(37)(E);(a)(37)(J)(ii).

### iii. Unlawful Corporate Group Maximum Rule

One of the regulations the SBA promulgated following the enactment of the CARES Act was the Unlawful Corporate Group Maximum Rule[2] ("CGR"), which provided that a business part of a single "corporate group" could not obtain more than $20 million in PPP loans. 85 Fed. Reg. 26325. The Rule defined "corporate group" to mean that businesses are "part of a single corporate group if they are majority owned, directly or indirectly, by a common parent." *Id*. All business were subject to the CGR, "even if the businesses are eligible for the waiver-of-affiliation provision under the CARES Act." *Id.*

---

[2] At times, this rule may be referred to as the Unlawful Corporate Group Maximum Rule, the Corporate Group Maximum Rule, or just the Corporate Group Rule. They are all referring to the same rule, and the Court refers to them all as the "CGR."

4

The CGR was reinstated with the passing of the EAA, reiterating that "[b]usinesses are subject to this limitation even if the businesses are eligible for the waiver-of-affiliation provision under the CARES Act." 86 Fed. Reg. 3702. The reinstated CGR retained the same definition of a "corporate group" and allowed businesses part of a corporate group to receive a second-draw loan, but the group could not receive more than $4 million in the aggregate. 86 Fed. Reg. 3720. And, failure to comply with the CGR would result in "loans [not] being eligible for forgiveness." 85 Fed. Reg. 26325.

### B. Petitioner's Loan History

Petitioner, a food-service kiosk operator in the Atlanta Airport, is a member of the hospitality industry. [Doc. 17-2 at 1]. It is one entity within the Russell Group, a group of 98 family-owned entities collectively employing over 1,100 people. [*Id.* at 2]. During the Covid pandemic, Petitioner received a first-draw PPP loan in the amount of $1,716,700.00 for which the SBA approved forgiveness. [*Id.*]. Before Petitioner applied for a second-draw PPP loan, eight other businesses within the Russell Group received second-draw PPP loans. [*Id.*]. One of these businesses was H.J. Russell & Company, which had a loan amount of $2,000,000 disbursed on February 8, 2021. [*Id.*]. Once the loan had already been disbursed, the SBA concluded that H.J. Russell & Company was ineligible for its second-draw loan because it was not a hospitality company; therefore, H.J. Russell was ineligible for

the waiver of affiliation rules and exceeded the PPP number-of-employees cap when aggregated with other members of the Russell Group. [*Id.* at 3].

On May 29, 2021, Petitioner was approved for a $2,000,000 second-draw PPP loan that was disbursed on June 1, 2021. [*Id.* at 4]. Including Petitioner's loan, the cumulative amount borrowed by the Russell Group for second-draw PPP loans was $5,409,573.82, which exceeded the $4,000,000 cap. [*Id.*]. However, without H.J. Russell & Company's ineligible loan, the cumulative amount of the Russell Group's second-draw PPP loans would have been $3,409,573.82. [*Id.*].

Petitioner and its lender applied for forgiveness of its entire second-draw loan on July 19, 2022, but the SBA denied Petitioner's forgiveness. [Id.]. The SBA determined that Petitioner was ineligible for the second-draw PPP loan because it violated the CGR. [*Id.*]. It determined that Petitioner and other members of the Russell Group had common ownership and based denial on the idea that Petitioner was part of a corporate group that had received more than $4,000,000 of second-draw PPP loans. [*Id.* at 5–6]. The violation of the CGR was the sole reason SBA denied forgiveness of Petitioner's entire loan. [*Id.* at 6].

On December 21, 2022, Petitioner appealed SBA's Final Loan Review Decision to the SBA Office of Hearing and Appeals ("OHA"), which affirmed the SBA's decision. [*Id.* at 6–7]. Petitioner then filed its petition for judicial review of OHA's order denying Petitioner's appeal with this Court. [Doc. 1]. Petitioner later

filed its Motion for Summary Judgment, moving for this Court to "set aside" the SBA's decision to direct the SBA to issue a new decision forgiving the second-draw PPP Loan, and vacate the CGR and declare that it is contrary to the CARES Act. [Doc. 17-1 at 29]. Respondent responded to this Motion, which the Court considered in determining summary judgment for either party. [Doc. 18]. Additionally, the Court conducted a hearing (the "Hearing") and heard arguments on Petitioner's Motion. [Doc. 29].

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is proper when the record evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if evidence suggests a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259 (11th Cir. 2004).

Although the parties in the instant case brought motions for summary judgment, because this Court sits as an appellate tribunal reviewing a decision from an administrative agency, a reviewing court "shall decide all relevant questions of law,

interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action[,]" and "hold unlawful and set aside agency action, findings, and conclusions found to be…arbitrary [and] capricious[.]" 5 U.S.C. § 706(2)(A). *See also Gray Television, Inc. v. Fed. Commc'ns Comm'n,* 130 F.4th 1201, 1212 (11th Cir. 2025).

The Court "must exercise [its] independent judgment in deciding whether the agency has acted within its statutory authority[.]" *Loper Bright Enter.s v. Raimondo*, 144 S. Ct. 2244, 2273 (2024).  ("[C]ourts decide legal questions by applying their own judgment."). And, courts "need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.*

"The APA's arbitrary-and-capricious standard requires that the agency action be reasonable and reasonably explained." *F.C.C. v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). An agency "must offer 'a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made' and cannot simply ignore 'an important aspect of the problem.'" *Ohio v. Env't Prot. Agency*, 603 U.S. 279, 280 (2024) (quoting *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 1983)).

## III.   DISCUSSION

In Petitioner's Motion, it argues first that the SBA's decision to apply the CGR to its second-draw PPP loan contradicts the statutory text of the CARES Act and the

EAA. [Doc. 17-1 at 15]. Petitioner further argues that even if the CGR applied, Respondent applied the rule in an arbitrary and capricious matter in counting and invalid loan and denying forgiveness of the entire second-draw loan. [*Id.* at 20, 26].

The Court agrees with Petitioner on its second argument, that if the CGR applied, it was applied in an arbitrary and capricious way. In reaching this decision, the Court need not determine whether the CGR comports with the CARES Act or the EAA. The Court will presume, for purposes of this Order, that Respondent's interpretation of the CGR is valid.[3]

### A. CGR applies to Petitioner

Analysis of statutory construction begins with the language of the statute. *Diamond v. Diehr*, 450 U.S. 175, 182 (1981); *see also EEOC v. STME, LLC*, 938 F.3d 1305, 1313-14 (11th Cir. 2019). Respondent interprets the language of the affiliation waiver in the CARES Act and the EAA *only* with respect to eligibility, "not with respect to administration, guarantee, or forgiveness of those loans." [Doc. 18 at 14]. And, as Respondent points out, the CGR does not "restrict" eligibility to obtain a loan. [*Id.* at 16]. "It does not close the door to participation in the PPP—it simply requires owners of multiple eligible businesses to exercise judgment about how to allocate the loans SBA made available among their businesses." [*Id.*]. Thus,

---

[3] The Court notes that it is not, in any way, determining whether Respondent's interpretation is correct.

the SBA was able to create the CGR without interfering with the CARES Act and EAA.

Assuming that this interpretation of the CGR is correct, it provides that a "corporate group" includes businesses "owned, directly or indirectly, by a common parent." 85 Fed. Reg. 26325. Petitioner would, therefore, be considered part of a "corporate group" and under the umbrella of the Russell Group, its parent company, for the determination of eligibility of loan forgiveness. However, the Court agrees with Petitioner that the way the CGR was applied was arbitrary and capricious. Petitioner stated during the Hearing that Respondent cannot reasonably explain its decision and can only provide "because I said so" as its reasoning; that appears to be true.

### B. Respondent applied CGR arbitrarily and capriciously

Respondent denied forgiveness of Petitioner's $2 million second-draw loan because, at the time Petitioner received this loan, eight other businesses in the Russell Group had received a cumulative total of $3,409,573.82 in second-draw PPP loans; this would make the entire corporate group's total just shy of $5.5 million, well-above the $4 million cap. [Doc. 17-2 ¶¶ 8, 9]. However, within this $3,409,573.82 total loaned to other businesses in the Russel Group was a $2 million loan that the SBA later concluded was invalid. [*Id.*]. Petitioner argues that this

invalid $2 million loan should not have been included in Respondent's calculation under the CGR.

Additionally, Respondent denied Petitioner partial forgiveness of nearly $600,000 that Petitioner argues it was eligible to have forgiven. Petitioner contends that even *if* Respondent properly calculated the total loan amount under the CGR, including the $2 million invalid loan, several hundreds of thousands of dollars loaned to Petitioner should have been forgiven. Before Petitioner's $2 million was added, Respondent's total for Petitioner's corporate group was $3,409,573.82 – Petitioner argues that $590,426.18 of its loan, that if added to the previous figure would equal the $4 million cap, should have been forgiven.

Respondent contends, as to loan calculation, federal regulation provides generally that failure to comply with the CGR could result in "loans not [being] eligible for forgiveness." 85 Fed. Reg. 26325. Respondent does not otherwise provide any context for its calculation, other than reiterating that "the SBA followed well-established definitions for affiliation, found that these Russell Group affiliated companies were subjected to the CGR, and denied forgiveness because Russell Group affiliated companies violated the CGR." [Doc. 18 at 22]. Further in defense of its position, Respondent simply states that "[t]he Russell Group should not be able to benefit both from being able to obtain a loan for which it is not eligible while still treating that loan as if it was never made." [Doc. 18 at 23]. Respondent cannot

11

provide any statutory or regulatory support for its calculation, and instead relies only on the contention that the Congress granted the SBA "extraordinarily broad powers. . . ." [*Id.* (quoting *In re Gateway Radiology*, 983 F.3d at 1239, 1247 (11th Cir. 2020))].

Respondent's citations to cases pre-*Loper* regarding the former "narrow standard of review" are predicated off a now-defunct standard, which provided that a reviewing court cannot to "substitute its judgment for the judgment of the agency." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009). But even under that restrictive standard, Respondent would still have to provide a reasonable explanation for its decision to avoid a finding that its decision was arbitrary and capricious. It has not. Respondent's application of the CGR as to Plaintiff's loan calculation and denial of partial forgiveness is arbitrary and capricious, in pertinent part because Respondent has failed to provide to this Court any sort of satisfactory reasoning for its decision beyond asserting that it has broad power to do so.

### C. Remedy

Where an agency has reached an arbitrary and capricious decision, "vacatur ... is the ordinary APA remedy," but it is not the only one. *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1290 (11th Cir. 2015) (quotation omitted). A reviewing court may also remand the case without vacatur. *See id.* When considering whether to vacate and remand, or just remand, the reviewing court must consider "the seriousness of the order's deficiencies (and thus the extent of doubt

whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed." *Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n*, 127 F.4th 303, 317 (11th Cir. 2025) (quoting *Black Warrior Riverkeeper, Inc.* 781 F.3d at 1290). "The decision...to vacate agency action falls within our broad equitable discretion." *Black Warrior Riverkeeper, Inc.* 781 F.3d at 1290.

"If a reviewing court agrees that the agency misinterpreted the law, it will set aside the agency's action and remand the case—even though the agency…might later, in the exercise of its lawful discretion, reach the same result for a different reason." *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998) (citing *SEC v. Chenery Corp.,* 318 U.S. 80 (1943)). "Because of the agency's expertise in administering its own regulations, the agency ordinarily should be given the opportunity to review application of those regulations to a particular factual context." *Bowen v. City of New York*, 476 U.S. 467, 485 (1986).

The Court will allow Respondent SBA the chance to review its' decision as to the second-draw PPP loans. Should Petitioner take issue with Respondent's decision, it may again follow the appropriate procedure to appeal that decision. Accordingly, Petitioner's Motion for Summary Judgment, [Doc. 17], is **DENIED**. This Court accordingly **VACATES** the SBA's Loan Review Decision and **REMANDS** for additional review.

**IT IS SO ORDERED**, this 8th day of September, 2025.

_____
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE